UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------X

MELINDA DESMARATTES,

                   *Plaintiff*,

    -against-

EQUIFAX, TRANSUNION, and EXPERIAN;

                   *Defendants*.

---------------------------------------X

**MEMORANDUM AND ORDER**

22-CV-3330 (KAM)(TAM)

**KIYO A. MATSUMOTO, United States District Judge:**

    Plaintiff Melinda Desmarattes ("Plaintiff"), proceeding *pro se*, commenced the instant action against Defendants Equifax Information Services LLC ("Equifax"), Trans Union LLC ("Trans Union"), and Experian Information Solutions, Inc. ("Experian," together, "Defendants"), alleging violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681 *et seq.*, as well as defamation. (*See* ECF No. 1, Ex. A ("Compl.") at ¶¶9—16, 20—22.) Defendant Equifax was subsequently terminated from the action pursuant to a stipulation of dismissal on January 27, 2023. Although Plaintiff filed a Third Amended Complaint (ECF No. 40, "TAC") naming Experian and Trans Union as defendants on March 24, 2023, she subsequently dismissed Defendant Experian on July 20, 2023.

    Currently before the Court is (1) Defendant Trans Union's motion for judgment on the pleadings, seeking to dismiss

Plaintiff's TAC for failure to state a claim and (2) Plaintiff's motion for extension of time to respond to the motion for judgment on the pleadings. (*See* ECF No. 48, Defendant's Notice of Motion for Judgment on the Pleadings ("Def't Mot."); ECF No. 50, Plaintiff's Motion for Extension of Time to Respond to Motion for Judgment on the Pleadings ("Pl. Mot.").) For the reasons stated below, Defendant Trans Union's motion is **granted** and Plaintiff's motion is **denied**.

<u>**BACKGROUND**</u>

For the purpose of deciding Defendant's Rule 12(c) motion, the Court accepts as true the factual allegations in the TAC and exhibits attached thereto,[1] (*see* TAC), and draws all inferences in Plaintiff's favor. *See Biro v. Condé Nast*, 807 F.3d 541, 544 (2d Cir. 2015). "A motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) is reviewed under the same standard as a motion to dismiss under Rule 12(b)(6)." *Santora v. Capio Partners, LLC*, 409 F. Supp. 3d 106, 108 (E.D.N.Y. 2017) (citing *Bank of New York v. First Millennium*, 607 F.3d 905, 922 (2d Cir. 2010)). Generally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the

---

[1] "In reviewing a motion to dismiss, we 'may consider [not only] the facts alleged in the complaint, [but also] documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint.'" *Sabir v. Williams*, 37 F.4th 810, 814 (2d Cir. 2022) (alterations in original) (citation omitted).

complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Israel Discount Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks and citation omitted). "When a plaintiff proceeds *pro se*, however, the Court may consider materials outside the complaint to the extent that they are consistent with the allegations in the complaint," *Scott-Monck v. Matrix Absence Mgmt., Inc.*, No. 19-cv-11798 (NSR), 2022 WL 2908007, at *4 (S.D.N.Y. July 22, 2022) (internal quotations omitted), including "factual allegations made by a *pro se* party in [her] papers opposing the motion [to dismiss]." *Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013).

## I.   Factual Background

With respect to Trans Union, Plaintiff alleges that she is a "consumer" as defined by the FCRA and that Defendant Trans Union is a "consumer reporting agency" as defined by the FCRA because it is "engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports." (TAC at ¶¶5, 7.) Plaintiff alleges that the reporting by Trans Union on Plaintiff included discrepancies with reporting by the subsequently dismissed defendant, Experian, regarding the "high credit limit, date opened, date last active," and other data points for various of

Plaintiff's accounts. (*Id.* at ¶¶19-20.) Plaintiff's TAC does not allege which of the reported information is inaccurate.

Specifically, Plaintiff states that on her September 20, 2022, credit report, regarding an unspecified account, Trans Union reported a "high credit" of "$340" whereas Experian reported "$0," the date opened for the account was "06/10/2019 in [Trans Union] and 06[/]01/2019 in Experian," and the last date active was "10/19/2021 in [Trans Union] and 07/01/2022 in Experian." (*Id.* at ¶21.) Plaintiff also cites discrepancies in her October 6, 2022, credit report regarding her Merrick Bank account, specifically that the date opened was "11/14/2019" with Trans Union and "11/01/2019" with Experian, that the high credit as "$1,509" with Trans Union and "$0" with Experian, and that the date last active was "08/31/2022" with Trans Union and "10/01/2022" with Experian. (*Id.* at ¶¶19, 22, p. 26.) Finally, Plaintiff cites discrepancies in her July 8, 2022, credit report regarding her First National Credit account, specifically that the balance, high credit, and past due amount "reported by [Trans Union] was $427 [and by] Experian was $0," that payment status was reported as "Collection/Charge Off by [Trans Union] and Unknown by Experian," and that the last date active and date opened for the account differed between Trans Union and Experian. (*Id.* at ¶¶19, 24, p. 28.) Plaintiff also states that Trans Union failed to reflect

4

payments made by her to First National Credit. (*Id.* at ¶44, p. 28.)

Plaintiff further alleges that two incorrect addresses were listed on her credit report, and that the date last active for her Citibank account was reported "differently . . . for the same account" by Trans Union and Experian. (*Id.* at ¶¶25-26.) Plaintiff alleges that she sent a dispute letter to Trans Union and Experian on March 3, 2022, alerting them to "inaccurate and/or incomplete information concerning [her] in consumer reports." (*Id.* at ¶17, pp. 23-24.) Plaintiff's alleged letter specifically points to the two "incorrect addresses" that "need to be removed" and then cites five "tradelines" that are "inaccurate because [she is] not legally obligated to pay for the alleged deficiency claim" and are also "reported inaccurately." (*Id.* at pp 23-24.) Plaintiff does not specify exactly what is reported inaccurately in either letter. (*Id.*)

Plaintiff alleges that Trans Union violated the FCRA by: (1) "fail[ing] to maintain and/or follow reasonable procedures to assure the maximum possible accuracy of the information it reported . . . in violation of 15 U.S.C. § 1681e(b)"; (2) "failing to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate and to subsequently delete the information" in violation of 15 U.S.C. § 1681i(a)(1); (3) failing to send to the furnishe[r]s all relevant information that it

received in Plaintiff's dispute letters" in violation of 15 U.S.C. § 1681i(a)(2); (4) "failing to review and consider all relevant information that it received in Plaintiff's communications" in violation of 15 U.S.C. § 1681i(a)(4); (5) "failing to delete any information that was the subject of Plaintiff's disputes and that was inaccurate or could not be verified" in violation of 15 U.S.C. § 1681i(a)(5); (6) "failing to delete any information that was the subject of Plaintiff's disputes and that was inaccurate or could not be verified" in violation of 15 U.S.C. § 168li(a)(5)(C)[2]; (7) "failing to provide the plaintiff with a description of the procedure used to determine the accuracy and completeness of the information" reported in violation of 15 U.S.C. § 168li(a)(6)(B)(iii); and (8) defaming Plaintiff by "continu[ing] to publish false and negative statements concerning Plaintiff's credit history up through the present time" despite "repeated notices from Plaintiff." (TAC at ¶¶53, 64, 73, 82, 91, 100, 109, 117, 119.)

Plaintiff alleges that due to Defendants' actions she "endured fear, humiliation, embarrassment, mental pain, suffering, inconvenience, and financial injury, including lost business

---

[2] Subsection (a)(5)(C) of Section 1681i requires a credit reporting agency to "maintain reasonable procedures designed to prevent the reappearance in a consumer's file, and in consumer reports on the consumer, of information that is deleted pursuant to this paragraph" and the Court construes Plaintiff's complaint to allege a failure to maintain reasonable procedures in addition to failing to delete the information in question.

profits." (*Id.* at ¶46.) Plaintiff does not point to any specific instances of being denied credit, but includes as an exhibit her "Credit Score Disclosure" from LendingPoint showing a Credit Score of 709 from Trans Union as of December 22, 2020. (*Id.* at p. 30.) Plaintiff seeks damages, injunctive relief, and a declaratory judgment "declaring Defendant's practice[s] unlawful, and that Defendants are liable to Plaintiff for damages caused by that practice" pursuant to 28 U.S.C. § 2201(a). (*Id.* at ¶124, p. 21.)

## II.  Procedural History

Plaintiff, proceeding *pro se*, commenced the instant action by filing a complaint in this court on June 3, 2022, naming Equifax, Trans Union, and Experian as defendants. (Compl.) Plaintiff filed a simultaneous motion for leave to proceed *in forma pauperis*. (ECF No. 2.) While the motion for leave to proceed *in forma pauperis* was pending, the Defendants were served, Trans Union answered the complaint on June 27, 2022, (ECF No. 10), and Equifax filed a motion for a pre-motion conference in anticipation of filing a motion to dismiss, (ECF No. 11), which Trans Union subsequently joined, (ECF No. 12). Prior to the scheduled pre-motion conference, however, this court granted Plaintiff's motion for leave to proceed *in forma pauperis* on July 28, 2022, but simultaneously dismissed Plaintiff's complaint without prejudice for lack of Article III standing, and granted leave to file an amended complaint. (ECF No. 16.)

Plaintiff subsequently filed her first amended complaint on August 4, 2022, against the same defendants, (ECF No. 17), and Equifax and Trans Union moved again for a pre-motion conference in anticipation of a motion to dismiss on August 18, 2022, (ECF No. 19). The Court granted the pre-motion conference and directed Plaintiff to respond to the letter by September 12, 2022. (Docket Entry dated August 31, 2022.) Plaintiff filed her opposition after the deadline, on September 13, 2022, (ECF No. 21), and this court held the pre-motion conference on September 20, 2022. Rather than proceed to motion practice, the court granted Plaintiff a "final" opportunity to file a second amended complaint by October 21, 2022. (Minute Entry dated September 20, 2022.) Plaintiff was warned that she must allege "more specific facts regarding the alleged inaccuracies on her credit reports; the dates and substance of her communications with Defendants; and the alleged denial of credit opportunities, including when and to whom she applied for credit and the reasons for the denial." (*Id.*)

On October 20, 2022, Plaintiff subsequently requested a 30-day extension of the deadline to file her second amended complaint, (ECF No. 25), and the court granted a one-week extension to October 28, 2022, (Docket Entry dated October 21, 2022). Plaintiff did not comply with the court order, and instead filed her second amended complaint on October 31, 2022. (ECF No. 26.) Defendants Equifax and Trans Union filed a motion for a pre-motion conference

seeking to dismiss Plaintiff's action for failure to comply with court orders pursuant to Fed. R. Civ. P. 41(b), and alternatively for failing to state a claim in her second amended complaint. (ECF No. 27.)

The court granted the defense request for a pre-motion conference, and subsequently granted Experian's request to join Trans Union's and Equifax's request to file a motion to dismiss. (Docket Entries dated November 29, 2022, and January 25, 2023.) Subsequently, Equifax filed a stipulation of dismissal on January 27, 2023, and was dismissed from the case. (ECF No. 34.) Plaintiff filed her response to the motion for a pre-motion conference on February 9, 2023, (ECF No. 37), and the court held the conference on February 22, 2023. During that conference, the court granted plaintiff a "final" opportunity to file a third amended complaint. (Minute Entry dated February 23, 2023.) Plaintiff was again advised to "allege more specific facts" and was cautioned that "her Third Amended Complaint will completely supersede her prior filed complaints in this action and thus, she should include all factual allegations and attach all relevant exhibits to the Third Amended Complaint." (*Id.*) The court warned Plaintiff to "**not expect nor request an extension of time, in light of the abundant opportunities this Court has provided her to produce sufficient factual allegations**" and further warned that if Plaintiff failed

to file her Third Amended Complaint, judgment dismissing the action would be entered. (*Id.*)

Plaintiff filed her third amended complaint on the date it was due, March 24, 2023, (*see generally* TAC), and the Defendants filed a joint letter advising the court that they intended to proceed with submission of a motion to dismiss on April 7, 2023. (ECF No. 41.)  Trans Union also answered the complaint and raised affirmative defenses on the same date.  (ECF No. 42 ("Answer").)  The parties filed a proposed briefing schedule for the motion to dismiss on April 27, 2023, which the court adopted on May 2, 2023. (ECF No. 43.)  Subsequently, on the date that Defendants' motion for judgment on the pleadings was due, June 9, 2023, Experian provided a notice of settlement to the court, (ECF No. 44), and Trans Union requested a one-week extension of time to file the motion for judgment on the pleadings in light of "case-resolution negotiations" between the parties, to which the Plaintiff consented. (ECF No. 45.)  The court granted Trans Union's motion for extension of time, extending Trans Union's deadline to serve its motion on Plaintiff to June 16, 2023, Plaintiff's deadline to serve her opposition on Trans Union to July 14, 2023, and Trans Union's deadline to serve its reply, if any, to July 28, 2023. (Docket Entry dated June 9, 2023.)  On July 28, 2023, Trans Union filed its motion for judgment on the pleadings, (Def't Mot.), alongside a notice to the court that Plaintiff had failed to oppose

or respond to Trans Union's motion, or request additional time to file a response, (ECF No. 49).  Trans Union provided proof of service of its motion on plaintiff and noted that this was Plaintiff's second failure to comply with a court order (after her untimely filing of her second amended complaint).  (*Id.*)  Trans Union again requested that the case be dismissed pursuant to Fed. R. Civ. P. 41(b) in light of Plaintiff's failure to comply with court orders.  (*Id.*)

Plaintiff filed a motion for extension of time to respond to the motion for judgment on the pleadings on July 30, 2023, 16 days after her deadline to respond to the motion.  (Pl. Mot.)  Plaintiff did not show any cause or provide any explanation for her failure to comply with the briefing schedule in her letter.  (*Id.*)  At the request of the Court, Trans Union responded opposing the motion for an extension of time, arguing that Plaintiff had failed to show her failure was because of "excusable neglect" and that further delay would prejudice Trans Union, which had "expended significant time and resources defending this matter."  (ECF No. 51.)  Plaintiff replied at the request of the court on August 14, 2023, arguing that "there is a learning curve" as a *pro se* litigant and "because of that oversights may occur."  (ECF No. 52 ("Pl. Reply").)  Plaintiff also argued that Trans Union failed to comply with a court deadline when it requested a one-week extension to file its motion for judgment on the pleadings on June 9, 2023.

11

(*Id.*)  Plaintiff  argued  that  Trans  Union  "did  not  give  a substantial reason for filing an extension of time motion."  (*Id.*) The Court now considers Plaintiff's motion for extension of time to respond to Trans Union, and Trans Union's motion for judgment on the pleadings.

## LEGAL STANDARD

### I.  Rule 6(b) Extension Requests

Federal Rule of Civil Procedure 6(b) ("Rule 6(b)") provides as follows:

> When an act may or must be done within a specified time, the court may, for good cause, extend the time: (A) with or without motion or notice if the court acts, or if a request is made, before the original time or its extension expires; or (B) on motion made after the time has expired if the party failed to act because of excusable neglect.

If a party fails to request an extension of time until after the expiration of the original deadline, "[t]he burden of proving excusable neglect lies with the late-claimant." *Alexander v. Saul*, 5 F.4th 139, 148 (2d Cir. 2021), *cert. denied sub nom*. *Alexander v. Kijakazi*, 142 S. Ct. 1461 (2022) (citing *In re Enron Corp.*, 419 F.3d 115, 121 (2d Cir. 2005)).  "[T]he Supreme Court [has] explained that, in assessing whether a showing of excusable neglect has been made with respect to such an application, a court should consider 'the danger of prejudice . . ., the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control

12

of the movant, and whether the movant acted in good faith.'" *Mattel, Inc. v. Radio City Entertainment*, 210 F.R.D. 504, 505 (S.D.N.Y. 2002) (citing *Pioneer Investment Services Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993)). "Although *Pioneer* interpreted excusable neglect in the context of Bankruptcy Rule 9006(b)(1), the Court analyzed that term as it is used in a variety of federal rules, including Rule 60(b)(1) . . . [and] [f]or that reason, [the Second Circuit has] held that *Pioneer*'s more liberal definition of excusable neglect is applicable beyond the bankruptcy context where it arose." *Canfield v. Van Atta Buick/GMC Truck, Inc.*, 127 F.3d 248, 250 (2d Cir. 1997) (internal citations and quotation marks omitted).

The Second Circuit subsequently explained that, even post-*Pioneer*, "inadvertence, ignorance of the rules, or mistakes construing the rules do not *usually* constitute 'excusable neglect.'" *Id.* Furthermore, the Second Circuit has explained that "the equities will rarely if ever favor a party who fails to follow the clear dictates of a court rule" and further stated "where the rule is entirely clear, we continue to expect that a party claiming excusable neglect will, in the ordinary course, lose under the *Pioneer* test." *Silivanch v. Celebrity Cruises, Inc.*, 333 F.3d 355, 366–67 (2d Cir. 2003) (internal citations and quotation marks omitted). For that reason, the Second Circuit and other circuits "have focused on the third factor: 'the reason for

13

the delay, including whether it was within the reasonable control of the movant.'" *Id.* at 366 (quoting *Pioneer*, 507 U.S. at 395).

## II.  Judgment on the Pleadings

Rule 12(c) permits a party to move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c).  "Granting judgment on the pleadings is appropriate when, after reviewing the record, the court is convinced that the plaintiff has failed to set forth a plausible claim for the requested relief based on the evidence presented." *New York State Catholic Health Plan, Inc. v. Academy O & P Assocs.*, 312 F.R.D. 278, 295 (E.D.N.Y. 2015) (citing *Milo v. City of New York*, 59 F. Supp. 3d 513, 520 (E.D.N.Y. 2014)).

"In deciding a Rule 12(c) motion, the same standard applicable to motions brought under Rule 12(b)(6) is employed." *Id.* (citing *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010)).  To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  Although "detailed factual allegations" are not required, "[a] pleading that offers labels or conclusions

14

or a formulaic recitation of the elements of a cause of action will not do." *Id.* (internal quotation marks and citation omitted).

"A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks and citations omitted). Such treatment, however, "does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (internal citation and quotation marks omitted); *see also Caidor v. Onondaga Cnty.*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them.") (italics, citations, and internal quotation marks omitted).

## DISCUSSION

The Court will first consider Plaintiff's motion for extension of time, and subsequently Defendant's motion for judgment on the pleadings.

### I.   Plaintiff's Motion for Extension of Time

This Court ordered that Plaintiff's opposition to Defendant Trans Union's motion for judgment on the pleadings was due on July 14, 2023.[3] (*See* Docket Entry dated June 9, 2023.) Over two weeks

---

[3] Pursuant to E.D.N.Y. Local Rule 6.1(b), Plaintiff would have been required to serve her "opposing affidavits and answering memoranda . . . within fourteen days after service of the moving papers," which would have been June 30, 2023,

after her opposition was due, Plaintiff subsequently filed a motion
for an extension of time to file her response on July 30, 2023, as
discussed *supra*. (*See* Pl. Mot.)  Because Plaintiff did not request
an extension of time to file her opposition until over two weeks
after the original deadline had elapsed, she has the burden of
showing her failure to act was the result of excusable neglect.
*See Alexander*, 5 F.4th at 148.   Plaintiff did not offer any
justification for her requested extension beyond stating "[m]y
case should be reviewed because the allegations are legitimate and
accurate. Defendant has committed FCRA violations." (Pl. Mot. at
1.)   Plaintiff did, however, offer arguments in support of her
tardy extension request in her response, (Pl. Reply), to Trans
Union's letter opposing her extension request, (ECF No. 51).

Plaintiff argues that her failure to oppose Trans Union's
motion was excusable neglect because "[a]s a pro[ ]se litigant,
there is a learning curve [and] because of that oversights may
occur . . . I did not intentionally disregard the Court's Orders."
(Pl. Reply at 1.)   Plaintiff further argues that the "case is not
frivolous and was not submitted in bad faith." (*Id.*)   In addition,
Plaintiff argues that Trans Union had also failed to comply with
Court-ordered deadlines, citing its request for a one-week
extension of time to file its motion for judgment on the pleadings.

_____

in the instant case.   In light of Plaintiff's *pro se* status, the Court adopted
a briefing schedule proposed by the parties that granted Plaintiff 28 days to
serve her opposition, resulting in the July 14, 2023, due date.

(*Id.*)   Plaintiff alleges that Trans Union "did not give a substantial reason for filing an extension of time motion."  (*Id.*)

Looking first at Plaintiff's argument that her failure to act was due to a "learning curve" as a *pro se* litigant, the Court is not persuaded that excusable neglect is present.  Far from being new to litigation in the federal courts, Plaintiff has brought five separate lawsuits before this court, three of which, including the instant case, have proceeded to the briefing of dispositive motions.[4]  (*See* Dockets 20-cv-04422-KAM-TAM, *Desmarattes v. NRA Group, LLC*; 20-cv-04423-KAM-LB, *Desmarattes v. Collecto, Inc.*; 20-cv-04722-KAM-LB, *Desmarattes v. Enhanced Recovery Company, LLC*; 20-cv-04723-KAM-TAM, *Desmarattes v. Consolidated Edison, Inc. et al.*)  Plaintiff has a history of disobeying court orders and deadlines but has nonetheless been afforded great latitude by this Court.  (*See* 20-cv-04722-KAM-LB, *Desmarattes v. Enhanced Recovery Company, LLC*; 20-cv-04723-KAM-TAM, *Desmarattes v. Consolidated Edison, Inc. et al.*)  In the instant case, Plaintiff disobeyed a court order granting her an extension to file her second amended complaint by October 28, 2022, filing her amended complaint instead on October 31, 2022.  (*See* ECF No. 26.)

---

[4] The Court takes judicial notice of the docket sheets of these proceedings considering Plaintiff's argument regarding her experience as a *pro se* litigant. *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir.2006) ("docket sheets are public records of which the court c[an] take judicial notice").

In examining whether excusable neglect is present, courts in the Second Circuit focus on the third *Pioneer* factor: "the reason for the delay, including whether it was within the reasonable control of the movant." *Silivanch v. Celebrity Cruises, Inc.*, 333 F.3d 355, 366 (2d Cir. 2003). Plaintiff does not cite any reason for her delay that was beyond her "reasonable control" in the instant case. Plaintiff states that her failure to oppose the motion was an "oversight," but does not suggest that she was unaware of the deadline for her opposition, or that circumstances outside her control prevented her from submitting it. (Pl. Reply at 1.) As such, this Court finds that Plaintiff's delay, for which she states that she "take[s] full responsibility," (*id.*), was entirely within her reasonable control.

As regards Plaintiff's second argument, that Trans Union has *also* violated a court-ordered briefing schedule, this Court finds it meritless. Plaintiff alleges that Trans Union "did not give a substantial reason for filing an extension of time motion." (Pl. Reply at 2.) However, Trans Union articulated several valid reasons for seeking its extension of time to file its motion for judgment on the pleadings. First, on the day that the motion was due, Trans Union's co-defendant Experian filed a notice of settlement with the Plaintiff. (*See* ECF No. 44.) Trans Union stated that the parties were engaged in "case-resolution negotiations" and as such requested an extension of time to file

18

its motion.  (*See* ECF No. 45.)   Trans Union represented, and Plaintiff did not dispute, that Plaintiff "agreed to an extension of seven (7) days, to June 16, 2023, to file [the] motion."  (*Id.*) Plaintiff now claims belatedly that Trans Union "[f]ailed [t]o [c]omply [w]ith [t]he Court's [d]eadlines" when, in reality, Trans Union filed a timely request for an extension of time *prior* to the expiration of the deadline for its motion to be filed, and Plaintiff consented to the extension.  (Pl. Reply at 2.) Plaintiff's attempt to equate her conduct with Trans Union's extension request is without merit and, given her previous consent to Trans Union's justified request, is arguably made in bad faith.

This Court finds that the first, second, and fourth *Pioneer* factors favor granting Plaintiff's motion for an extension.  The length of delay-approximately three weeks-was short, and nothing suggests that Plaintiff acted in bad faith in originally requesting an extension.  Trans Union argues, and the Court notes, that the delay is prejudicial considering the "significant time and resources [Trans Union has expended] defending this matter," however, the Court finds that the prejudice from a delay would not be significant.  (ECF No. 51 at 3.)  Notwithstanding the above, the Court finds the third *Pioneer* factor weighs heavily against granting Plaintiff's motion for an extension, as discussed *supra*. "Affording dispositive weight to that factor accords with [Second Circuit] precedents, which have described the reason for the delay

as the most important *Pioneer* factor." *Alexander*, 5 F.4th at 149.
As such, in light of Plaintiff's failure to establish excusable
neglect, this Court denies Plaintiff's motion for an extension of
time to file her opposition to Trans Union's motion for judgment
on the pleadings.  Nonetheless, the Court considers Plaintiff's
statement in her motion to extend time for her opposition that her
allegations in the TAC "are legitimate and accurate."  (Pl. Mot.
at 1.)

## II.  Defendant's Motion for Judgment on the Pleadings

### A. Plaintiff's FCRA Claims

Congress enacted the FCRA "to ensure fair and accurate credit
reporting, promote efficiency in the banking system, and protect
consumer privacy." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52
(2007).  Accordingly, Credit Reporting Agencies ("CRAs") are
required to "follow reasonable procedures to assure maximum
possible accuracy of the information" contained within a
consumer's credit report.  15 U.S.C. § 1681e(b).

"To prevail against a CRA in an action brought under §
1681e(b), the plaintiff-consumer must establish that the
challenged report is inaccurate." *Hossain v. Portfolio Recovery
Assocs., LLC*, No. 22-CV-5124 (DLI), 2023 WL 6155974, at *2
(E.D.N.Y. Sept. 21, 2023) (citing *Shimon v. Equifax Info. Servs.
LLC*, 994 F.3d 88, 92 (2d Cir. 2021)).  Section 1681i of the FCRA
additionally requires that "if a consumer notifies a [CRA] — either

directly or indirectly — of a dispute as to the accuracy of any item of information contained in [her] file, within thirty days of notification, the [CRA] shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate." *Khan v. Equifax Info. Servs., LLC*, No. 18-CV-6367 (MKB), 2019 WL 2492762, at *3 (E.D.N.Y. June 14, 2019) (internal citation and quotation marks omitted).

"In considering a challenge under § 1681e(b) or § 1681i, the threshold question is whether the disputed credit information is accurate; if the information is accurate, no further inquiry into the reasonableness of the consumer reporting agency's procedure is necessary." *Artemov v. TransUnion, LLC*, 2020 WL 5211068, at *2 (E.D.N.Y. Sept. 1, 2020) (internal citation and quotation marks omitted). The Second Circuit recently held that an assessment of "accuracy" under the FCRA "requires a focus on objectively and readily verifiable information[,]" which prevents a plaintiff-consumer from bringing an FCRA claim when the purported inaccuracy is premised on an unresolved legal question. *Mader v. Experian Information Solutions, Inc.*, 56 F.4th 264, 269 (2d Cir. 2023). Subsequently, the Second Circuit clarified its decision by holding that, while *Mader* remains good law, "there is no threshold inquiry [required] under the FCRA as to whether any purportedly inaccurate information is legal or factual in nature." *Sessa v. Trans Union, LLC*, 74 F.4th 38, 43 (2d Cir. 2023) ("The question of whether a

21

debt is objectively and readily verifiable will *sometimes*, as it did in *Mader*, involve an inquiry into whether the debt is the subject of a legal dispute."). In assessing inaccuracy, the Second Circuit has observed that "the overwhelming weight of authority holds that a credit report is inaccurate either when it is patently incorrect or when it is misleading in such a way and to such an extent that it can be expected to have an adverse effect." *Shimon v. Equifax Info. Servs. LLC*, 994 F.3d 88, 91 (2d Cir. 2021) (citing *Khan,* 2019 WL 2492762, at *3).

Plaintiff's TAC fails to state a claim pursuant to sections 1681e(b) and 1681i because she has not alleged facts showing that the information that Trans Union reported about her is inaccurate. *See Khan*, 2019 WL 2492762, at *3 (explaining that under both section 1681e(b) and section 1681i, a plaintiff must allege that the disputed information is inaccurate). First, Plaintiff alleges in her complaint that Trans Union "published a credit report to Plaintiff's account showing discrepancies in the balance, date opened, account status, high credit, past due, payment status, and date last active." (TAC at ¶16.) Accordingly, Plaintiff alleges that she sent a letter to Trans Union stating that a number of tradelines were "inaccurate and/or incomplete . . . because I am not legally obligated to pay for the alleged deficiency claim[] [and] the tradeline is reported incorrectly" and that two addresses listen on her account were "incorrect." (*Id.* at p. 24.)

In reciting numerous "discrepancies" between her credit reports from the various CRAs, Plaintiff fails to clearly state which of the various reports was incorrect. (*Id.* at ¶¶21-25.) Rather, Plaintiff only alleges that the information was reported "differently" in the various credit reports, and does not specify how the information *should have been* factually reported. (*Id.*) Likewise, Plaintiff's letter to Trans Union lists a number of tradelines that she alleged were "inaccurate and/or incomplete" or contained claims which she was "not legally obligated to pay" but does not offer any specifics regarding the alleged errors or legally deficient claims. (*Id.* at p. 24.) In the absence of any allegations by Plaintiff as to the *correct* information regarding any of the various discrepancies, she fails to sufficiently allege that Trans Union's reporting was inaccurate.

As to Plaintiff's claim that she was not "legally obligated to pay" several tradelines reported by Trans Union, she again fails to specify *which*, if any, tradeline suffered from a legal deficiency. Even if Plaintiff had actually alleged a specific legal deficiency with one of her debts, however, Circuit precedent in *Mader* would preclude her from using it as the basis of a Section 1681e claim. *Mader v. Experian Info. Sols., Inc.*, 56 F.4th 264, 270 (2d Cir. 2023) ("inaccuracies that turn on legal disputes are not cognizable under the FCRA").

Second, Plaintiff alleges that she "made payments to First National Credit" which Trans Union "did not report . . . but has listed a balance of $427 on Plaintiff's credit report." (*Id.* at ¶44.)  Plaintiff does not specifically allege that $427 is an incorrect balance for her First National Credit Account, or state what the correct balance was, but faults Trans Union for failing to report alleged payments on the account.  (*Id.* at ¶44.)  In support of this claim, Plaintiff attaches two screenshots showing "scheduled" payments to "Legacy Visa" but fails to show any evidence that the payments were actually made, or to what specific account they were posted.  (*Id.* at p. 27.)  Looking at the cited exhibit referenced in and attached to Plaintiff's complaint, contrary to Plaintiff's assertion, Trans Union's credit report on her "FNCC" account with account number "423980190686****"[5] shows a "Date of Last Payment" of "12/27/2021" – the date shown in her screenshot of her final scheduled payment.  (*Id.* at p. 27-28.)  As such, it appears that Plaintiff's Trans Union credit report does in fact reflect a payment dated December 27, 2021.[6]  Thus,

---

[5] This account number and tradeline is consistent with Plaintiff's list of accounts in her complaint, which includes "FIRST NATIONAL CREDIT CA[ ]Acct# 423980190686****."  (TAC at ¶19.)

[6] "If the allegations of a pleading are contradicted by documents made a part thereof, the document controls and the court need not accept as true the allegations of the pleading."  *In the Matter of the Trusteeships Created by Tropic CDO I Ltd.*, 92 F. Supp. 3d 163, 171 (S.D.N.Y. 2015) (internal quotation marks and citation omitted).

Plaintiff's claim based on a failure to accurately report a payment is without factual support.

Finally, as regards the "incorrect" addresses, the Court agrees with Trans Union that an address is not information "bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living" such that it would constitute a "consumer report" under the FCRA. 15 U.S.C. § 1681a(d)(1). Numerous courts in this circuit have come to a similar conclusion. *See, e.g., Ali v. Vikar Mgmt. Ltd.*, 994 F. Supp. 492, 497 (S.D.N.Y. 1998) ("Address information on a consumer, for example, is not a consumer report because it is not information that bears on any of the characteristics described in 15 U.S.C. § 1681a(d)(1)."); *Williams-Steele v. Trans Union*, No. 12-CV-0310 (GBD) (JCF), 2015 WL 576714, at *2 (S.D.N.Y. Feb. 10, 2015), *aff'd sub nom. Williams-Steele v. TransUnion*, 642 F. App'x 72 (2d Cir. 2016) ("the correct reporting of Plaintiff's telephone number and additional address has no bearing on Plaintiff's credit worthiness or eligibility for credit, and therefore the alleged inaccuracies are not actionable"); *Perez v. Experian*, No. 20-CV-9119 (PAE) (JLC), 2021 WL 4784280, at *9 (S.D.N.Y. Oct. 14, 2021), *report and recommendation adopted*, 2021 WL 5088036 (S.D.N.Y. Nov. 2, 2021) ("[Plaintiff's] allegations regarding his address changes and

gender do not state a claim for inaccurate information under the FCRA as a matter of law.").

Because Plaintiff does not state facts demonstrating that Trans Union's reports about Plaintiff were inaccurate, her claims fail to satisfy the threshold requirement for a claim under Sections 1681e(b) or 1681i. As such, because Plaintiff's TAC fails to adequately allege sufficient facts to sustain a claim based on any inaccuracy, "no further inquiry into the reasonableness of the consumer reporting agency's procedure is necessary." *Artemov v. TransUnion, LLC*, 2020 WL 5211068, at *2 (E.D.N.Y. Sept. 1, 2020) (internal quotation marks and citation omitted).

### B. Standing

"Courts have an independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it." *Hertz Corp. v. Friend*, 559 U.S. 77, 94 (2010) (citation omitted). "The irreducible constitutional minimum of standing derives from Article III, Section 2 of the U.S. Constitution, which limits federal judicial power to cases and controversies." *Nat. Res. Def. Council, Inc. v. U.S. Food & Drug Admin.*, 710 F.3d 71, 79 (2d Cir. 2013) (internal quotation marks and citations omitted). To establish Article III standing, a plaintiff must show "(i) that [s]he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed

26

by judicial relief." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992)).  At the pleading stage, a plaintiff "bears the burden of alleging facts that affirmatively and plausibly suggest that [she] has standing to sue." *Calcano v. Swarovski N. Am. Ltd.*, 36 F.4th 68, 75 (2d Cir. 2022) (internal quotation marks and citation omitted).

As the Supreme Court explained in *TransUnion*, simply alleging a statutory violation does not demonstrate a concrete injury.  141 S. Ct. at 2205; *see also Harty v. W. Point Realty, Inc.*, 28 F.4th 435, 444 (2d Cir. 2022) ("*TransUnion* makes clear that a statutory violation alone, however labeled by Congress, is not sufficient for Article III standing."); *Maddox v. Bank of N.Y. Mellon Tr. Co., N.A.*, 19 F.4th 58, 64 (2d Cir. 2021) ("*TransUnion* established that in suits for damages plaintiffs cannot establish Article III standing by relying entirely on a statutory violation or risk of future harm.").  Instead, Plaintiff must plausibly allege that the statutory violation resulted in a concrete injury, *i.e.*, a "physical, monetary, or cognizable intangible harm[] traditionally recognized as providing a basis for a lawsuit in American courts." *Harty*, 28 F.4th at 442-43 (quoting *TransUnion*, 141 S. Ct. at 2206).

The Court finds that, even if Plaintiff had sufficiently pleaded facts showing that Trans Union's reporting was inaccurate, her claims still fail because she did not allege facts showing

27

that she suffered "physical, monetary, or cognizable intangible harm." Plaintiff alleges in conclusory fashion that she "endured fear, humiliation, embarrassment, mental pain, suffering, inconvenience, and financial injury, including lost business profits" as a result of Trans Union's actions. (TAC at ¶46.) However, the only exhibit offered in support of this contention is a screenshot showing a list of "people and/or organizations who have obtained a copy of [Plaintiff's] Credit Report" and a screenshot of her "Credit Score Disclosure" from LendingPoint, showing a score of 709 as of December 22, 2020. (*Id.* at pp. 29-30.) The harms allegedly suffered by Plaintiff are vague, conclusory, and akin to the injuries found insufficient by other courts in this Circuit. *See, e.g.*, *Gross v. TransUnion, LLC*, 607 F. Supp. 3d 269, 273 (E.D.N.Y. 2022) (conclusory allegations of "injury to [plaintiff's] credit worthiness," "increased difficulty obtaining credit," and "embarrassment, humiliation and other emotional injuries" insufficient for Article III standing); *Zlotnick v. Equifax Info. Servs.,* 583 F. Supp. 3d 387, 391 (E.D.N.Y. 2022) (conclusory allegations of "mental and emotional pain, anguish, humiliation, and embarrassment of credit denial" insufficient for Article III standing).

Plaintiff's exhibits showing a list of credit inquiries and her credit score reveal no specific instances in which Trans Union's credit reporting resulted in a denial of credit. As such,

Plaintiff's TAC does not include any "specific allegations of reputational or monetary harm" that establish her constitutional standing. *Spira v. Trans Union, LLC*, No. 21-cv-2367 (KMK), 2022 WL 2819469, at *4 (S.D.N.Y. July 19, 2022); *see also Gross,* 607 F. Supp. 3d at 273 (finding that where the plaintiff's "alleged harms [were] not expenses, costs, any specific lost credit opportunity, or specific emotional injuries," the allegations in the complaint failed to show how the defendant's alleged error reporting the wrong entity as the plaintiff's creditor "caused [the] plaintiff to suffer a 'concrete and particularized' harm"). As Plaintiff has failed to plead sufficient facts to plausibly suggest that she suffered concrete injuries as required by Article III, the Court does not have subject matter jurisdiction over her FCRA claims even if she had properly alleged an actual inaccuracy.

### C. State Law Claims

#### i. Supplemental Jurisdiction

Plaintiff also alleges that Trans Union has published statements that "falsely reflect that [she] was a debtor" and "paint Plaintiff as a financially irresponsible and delinquent person," which she argues is "libel per se." (TAC at ¶¶113, 115, 118.) Because a defamation claim would arise under state common law, this Court may consider it under diversity or supplemental jurisdiction. *See* 28 U.S.C. §§ 1332, 1367.

Plaintiff alleges that she is a citizen of New York State (*see* TAC at ¶5), and Trans Union states that it is a Delaware Limited Liability Corporation, but fails to state the citizenship of its members, (*see* ECF No. 42 at ¶7).  Because the Court does not have information regarding the LLC membership of Trans Union, and because Plaintiff does not allege that more than $75,000 is in dispute as regards the defamation claim, the Court assumes without deciding that it does not have diversity jurisdiction over the state law claims.  *See Bayerische Landesbank, New York Branch v. Aladdin Capital Management LLC*, 692 F.3d 42, 49 (2d Cir. 2012) (the citizenship of an LLC is not where it is incorporated or has its principal place of business, but rather the citizenship of its members).

Turning to supplemental jurisdiction, "a district court 'may decline to exercise supplemental jurisdiction' if it 'has dismissed all claims over which it has original jurisdiction.'" *Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting 28 U.S.C. § 1367(a)).  "Once a district court's discretion is triggered under § 1367(c)(3), it balances the traditional 'values of judicial economy, convenience, fairness, and comity' in deciding whether to exercise jurisdiction." *Id.* at 122 (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350, 108 S. Ct. 614, 619 (1988)).  Weighing the values of judicial economy, convenience, fairness, and comity, the Court will

exercise supplemental jurisdiction over the remaining state law claim in the instant case.  Plaintiff's allegations of defamatory credit reporting do not present "novel or unresolved questions of state law" that would implicate comity.  *Valencia ex rel. Franco v. Lee,* 316 F.3d 299, 306 (2d Cir. 2003) (citation omitted).  Judicial economy and convenience is served by retaining and exercising supplemental jurisdiction, because the motion for judgment on the pleadings is ripe for a decision, including on the state law claim.  Finally, principles of fairness weigh in favor of retaining jurisdiction, as Plaintiff has already been afforded three opportunities to amend her complaint.

### ii. Defamation

Plaintiff's common law claim of defamation is limited by 15 U.S.C. § 1681h(e), which "states that a consumer who brings any action or proceeding for defamation, invasion of privacy, or negligence based on information in credit reports needs to prove malice or willful intent to injure on the part of the credit agency in order to recover." *Marekh v. Equifax*, 2 F. App'x 155, 156 (2d Cir. 2001); *see also Holmes v. Experian Info. Sols., Inc.*, 507 F. App'x 33, 35 (2d Cir. 2013) ("the FCRA preempts claims of negligence by consumer reporting agencies, allowing recovery only for malice or willfulness").  Plaintiff has failed to allege inaccurate reporting, as discussed *supra,* nor has she alleged facts establishing malice or willful intent to injure, as required to

pursue her defamation claim.  As such, Plaintiff's defamation claim is deficient and is dismissed.

### CONCLUSION

For the forgoing reasons, Defendant Trans Union's motion for judgment on the pleadings is **granted**, and Plaintiff's claims are **dismissed**.  Plaintiff's motion for an extension of time to respond to the motion for judgment on the pleadings is further **denied**.  The Clerk of Court is respectfully directed to enter judgment in favor of Defendant Trans Union and close this case. Defendant is requested to serve a copy of this Memorandum and Order and the judgment on *pro se* Plaintiff and note service on the docket no later than December 12, 2023.

**SO ORDERED**

Dated:      December 7, 2023
            Brooklyn, New York

                                    _____
                                    **HON. KIYO A. MATSUMOTO**
                                    United States District Judge
                                    Eastern District of New York